IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN HARDY,

                               Plaintiff,

   v.                                                             OPINION and ORDER

TY OLSTAD,                                                20-cv-754-jdp

                               Defendant.

---

Plaintiff John Hardy filed a complaint alleging that defendant Ty Olstad owes him $450 million in assets from their jointly owned business. Dkt. 1. Olstad did not appear, answer, or otherwise defend the suit, so Hardy sought a default judgment. Dkt. 4. The court denied the original motion, and there were more false steps, but the clerk entered default in November 2020. Dkt. 19. The court gave Hardy time to develop evidence in support of his claim for damages, and Hardy again moved for default judgment. Dkt. 35. The court held an evidentiary hearing on the motion on March 11, 2022. Hardy appeared in person and by counsel, Kyle Hanson. Hardy and the process server testified at the hearing.

The court finds that the summons and amended complaint were properly served and that Olstad defaulted, and thus entry of default was proper.

Entry of default generally means that the allegations relating to liability are taken as true, but a plaintiff must still prove his damages. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The burden of proof for damages is lower than the standard for causation. *BCS Servs. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011). But a plaintiff still must present evidence that establishes the amount of damages with reasonable certainty. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (internal citations omitted). The size of a

damages award is a matter committed to the court's discretion. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014).

The evidence that Hardy has provided does not show that he is entitled to judgment for compensatory damages of $450 million and additional punitive damages.

Hardy's testimony about the joint business, Global Strategic Consultants, was vague about the activities and assets of the business. Hardy says that he and his son in law, Ty Olstad, agreed to a joint venture, founded as a Minnesota limited liability company. (The court confirmed that Minnesota records reflect an inactive limited liability company under the name Global Strategic Consultants with Ty Olstad as manager.) The plan, according to Hardy, was that Hardy would provide his expertise as a consultant (he's a chemical engineer). Olstad would contribute some "high intensity" activities related to technology-related assets that he had an interest in. Hardy testified that he had access to and control over the Global Strategic Consultants bank account, and from the records of that account he determined that in the six years from 2012 to 2017, Hardy had contributed about $1.6 million to the company from consulting work that he had performed for DuPont. That amount was split between Hardy and Olstad, and Hardy did not claim he had anything else coming from the DuPont work. Hardy identified no other assets or funds that he contributed to Global Strategic Consultants.

Hardy contends that Olstad had agreed to contribute to Global Strategic Consultants other technology-related assets. But Hardy did not provide any bank statements, the LLC's articles of incorporation, earnings reports, tax statements, or even the business plan he said he was working on with Olstad. If any of those documents exist, Hardy should have provided them at the long-delayed hearing. The nearly complete lack of documentation makes Hardy's version of the events implausible.

At the hearing, Hardy presented a number documents that he said were screen shots of Olstad's financial accounts. Dkt. 41. Hardy said that Olstad sent those by text from time to time to show how the joint business was doing. For example, Dkt. 41 shows a Merrill Edge account showing about $56 million worth of stock in "CMKM Diamonds, Inc." Hardy said that Olstad had received that stock as a settlement in some litigation, and that Hardy had pledged to contribute it to Global Strategic Consultants. Hardy alluded to other technology-related assets that Olstad had been interested in, but he provided no documentation of those. Dkt. 41-1 contained 20 pages of account records for U.S. Bank checking accounts showing balances increasing to about $262 million. Hardy said that Olstad provided these screenshots by text with assurances that these funds belonged to the joint business.

Hardy had a document, dated November 17, 2019, that Hardy said had been signed by both Hardy and Olstad. Dkt. 13-1. By its terms, the document affirms that the two men were partners in Global Strategic Consultants and that the company's assets and profits were to be split evenly between them. The document also states that "documentation" and "screenshots" provided by Olstad to Hardy were "accurate and not misleading at the time." But the document does not attach any documents, or specifically identify any documents, and it does not cite any particular value of the assets of Global Strategic Consultants.

Hardy said that on May 25, 2020, he met with Olstad to resolve the matter of dividing the business assets. At the meeting, Hardy testified, Olstad logged into his bank account to show a balance of more than $900 million. Olstad told Hardy that they were billionaires. At the hearing, Hardy had no plausible explanation of how the business's assets grew from less than $60 million to nearly a billion dollars in just four years. Hardy testified that he and Olstad developed a foreign currency trading algorithm that JPMorgan used to invest their funds. But

Hardy provided no documentation of the algorithm itself or of any communications with JPMorgan.

The Merrill Edge and U.S. Bank screenshots could have easily been faked by anyone with even minimal Photoshop skills. The court had given Hardy more than a year to pursue third-party discovery of the financial institutions that might have information about Olstad's accounts. But those efforts apparently produced nothing: Hardy presented no evidence to corroborate the purported account screenshots. And even if the screenshots had accurately reflected the balances in Olstad's accounts, Hardy did not provide any corroborating evidence of his claim that Olstad had pledged to contribute all these extraordinary assets to Global Strategic Consultants.

Hardy's version of the events is weakly documented, poorly explained, and fundamentally implausible. The court finds that Hardy has not proven his entitlement to damages to a reasonable degree of certainty.

Because Olstad has not answered or otherwise defended this lawsuit, the court will grant the motion for default judgment. *See* Fed. R. Civ. P. 55(b). But Hardy will be awarded only one dollar in nominal damages because he has not proven that he is entitled to more. *See TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007) (nominal damages appropriate if liability is proven but damages are not).

ORDER

Plaintiff John Hardy's motion for default judgment, Dkt. 35, is GRANTED. The clerk of court is directed to enter a judgment for one dollar in favor of plaintiff and close this case.

Entered March 16, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge